UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

SHEILA ANN TURNER,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        No.:   3:24-CV-182-TAV-CRW
                                      )
COMMISSIONER OF SOCIAL                )
SECURITY ADMINISTRATION,              )
                                      )
            Defendant.                )

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on a Report and Recommendation ("R&R")
issued by United States Magistrate Judge Cynthia R. Wyrick on April 28, 2025 [Doc. 16].
In the R&R, Judge Wyrick recommends that plaintiff's request for remand be denied, and
the final decision of the Commissioner be affirmed. Plaintiff[1] timely filed her objections
to the R&R on May 12, 2025 [Doc. 17]. Defendant[2] filed a response to plaintiff's
objections [Doc. 18]. For the reasons that follow, plaintiff's objections [Docs. 17] are
**OVERRULED**, and the Court **MODIFIES in part** and **ACCEPTS in part** the R&R
[Doc. 16].

## I.    Background

The Court finds that the "Procedural and Factual Overview" section contained in
the R&R adequately details the relevant factual background and procedural history in this

---

[1] Throughout this memorandum opinion, plaintiff is also referred to as "claimant."

[2] Throughout this memorandum opinion, defendant is also referred to as
"Commissioner."

case [*See* Doc. 16, pp. 3–6].  As neither party has objected to this portion of the R&R, the

Court incorporates it in part below:

> Sheila Ann Turner ("Claimant") filed an application for Social Security
> Disability Insurance Benefits on September 29, 2020, and protectively filed
> an application for Supplemental Security Income on April 7, 2021.  In both
> applications, Claimant alleges a disability onset date of September 1, 2019.
> She contends that the conditions of dysesthesia, trichitillosis, along with the
> effects she suffers from black mold exposure, render her disabled.  Her
> claims were denied initially and on reconsideration.  Thereafter, Claimant
> requested a hearing which was conducted on April 25, 2023, before
> Administrative Law Judge ("ALJ") Jim Beeby.  Following the hearing, the
> ALJ issued a decision on May 9, 2023, finding that Claimant was not
> disabled.  In his decision, the ALJ found the following:
>
> 1. The claimant meets the insured status requirements of the Social
>    Security Act through December 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since
>    September 1, 2019, the alleged onset date.
>
> 3. The claimant has the following severe impairments: respiratory disorder
>    due to possible mold exposure; major depressive disorder; and
>    generalized anxiety.
>
> 4. The claimant does not have an impairment or combination of
>    impairments that meets or medically equals the severity of one of the
>    listed impairments in 20 CFR Part 404, Subpart P, Appendix.
>
> 5. After careful consideration of the entire record, the ALJ found that the
>    claimant has the residual functional capacity to perform a full range of
>    work at all exertional levels but with the following non-exertional
>    limitations: The claimant can tolerate occasional, concentrated exposure
>    to atmospheric conditions as defined in the Selected Characteristics of
>    Occupations of the Dictionary of Occupational Titles.  The Claimant
>    can understand, remember and perform simple instructions and tasks;
>    can concentrate and persist on these tasks for at least two hours at a
>    time; would perform best on tasks not requiring time or quota pressures;
>    can acceptably interact with co-workers and supervisors on a frequent
>    basis, and with the public on an occasional basis; and can adapt to
>    occasional simple work changes in a routine work setting.

2

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on March 18, 1971, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  The claimant has a limited education.

9.  Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2019, through the date of this decision.

Claimant subsequently requested Appeals Council review, but the request was denied on February 28, 2024.  As a result, the ALJ's decision ("the decision") became the final decision of the Commissioner of Social Security.

On appeal, Claimant asserts that the ALJ erred in formulating her RFC because he failed to properly evaluate and explain his consideration of the opinion of consultative examiner Kathryn R. Smith, Ph.D.  Claimant takes issue with the ALJ's conclusion that Dr. Smith's opinion was unpersuasive and his refusal to consider the limitations Dr. Smith assigned to her when he formulated her RFC.  More specifically, Claimant argues that the ALJ improperly rejected Dr. Smith's finding that Claimant had a marked restriction in ability to adapt to changes and work requirements and that she had moderate limitations in her ability to concentrate and to interact appropriately with others.  More specifically, Claimant asserts that the ALJ erred in his analysis of the [] supportability and consistency factors as they relate to Dr. Smith's opinion.  While the ALJ provided seven specific reasons as to why he found Dr. Smith's opinion unpersuasive, Claimant contends that only one of the provided reasons addresses supportability. According to Claimant, "[e]ven when read as a whole, the only portion of the ALJ's decision which could be interpreted as addressing supportability

is the ALJ's single assertion that Dr. Smith relied too heavily on the claimant's subjective reports." Claimant contends that this analysis fails to adequately articulate why the ALJ found Dr. Smith's opinion unpersuasive as is required by applicable regulations.

In response, the Commissioner argues that the ALJ appropriately accounted for the opinions offered by Dr. Smith in formulating Claimant's RFC and properly considered the supportability and consistency of those opinions before finding them unpersuasive. The Commissioner further asserts that the ALJ properly determined that the record supported a conclusion that Claimant had moderate limitations in her ability to adapt to changes and work requirements rather than the marked limitations Dr. Smith assigned to her. Finally, the Commissioner contends that the seven reasons articulated by the ALJ as to why he did not find Dr. Smith's opinion persuasive demonstrate that the ALJ met the articulation requirements. Moreover, while Claimant states that only one of these seven reasons address supportability, the Commissioner argues that four of the seven of them address the factor. For these reasons, the Commissioner asks the Court to affirm the ALJ's decision.

[Doc. 16, pp. 3–6 (internal citations and footnotes omitted)].

After considering the parties' arguments, Judge Wyrick concluded that the ALJ complied with applicable regulations and provided specific findings to justify his conclusion that Dr. Smith's opinions were not supportable [*Id.* at 20]. Specifically, Judge Wyrick noted that the first, fourth, sixth, and in part the fifth and final reasons the ALJ provided for discounting Dr. Smith's opinion addressed supportability [*Id.* at 18–20]. Furthermore, Judge Wyrick determined that there was substantial evidence to support the ALJ's conclusion that Dr. Smith's opinion was not entirely consistent with the record [*Id.* at 23].

4

## II. Standard of Review

This Court reviews *de novo* those portions of the magistrate judge's report and recommendation to which a party objects, unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira*, 806 F.2d at 637 (internal quotation marks omitted) (citation omitted). A general objection, in contrast to a specific objection, "has the same effect[ ] as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, a litigant must identify each issue in the report and recommendation to which the litigant objects with sufficient clarity such that the Court can identify it, or else that issue is deemed waived. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). Furthermore, each objection to a magistrate judge's recommendation should explain the source of the error. *Howard*, 932 F. 2d at 509.

In addition, if "objections merely restate the arguments asserted" earlier by a party, "which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No.

5

1:19-cv-250, 2020 WL 2732399, at *2 (E.D. Tenn. May 26, 2020) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)); *accord Thrower v. Montgomery*, 50 F. App'x 262, 264 (6th Cir. 2002) (affirming the district court's dismissal of the action because in part, plaintiff presented "no new arguments beyond those already addressed by the magistrate judge").

## III. Analysis

Plaintiff makes two objections to the R&R and submits that the errors of the ALJ are not harmless [Doc. 17]. First, plaintiff objects to the R&R's findings regarding supportability, arguing that such findings "improperly rely on the U.S. Magistrate's post-hoc rationalizations when the ALJ himself failed to adequately explain his reasoning for discounting the opinion of Dr. Smith as required under the regulations" [*Id.* at 3]. Second, plaintiff objects to the R&R's reliance on *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 335 (6th Cir. 2007), arguing that this case is clearly distinguishable from "faulting a mentally ill individual for failing to obtain and follow through with the appropriate mental health treatment" [*Id.* at 3–4]. Finally, plaintiff asserts that the ALJ's errors are prejudicial as the adoption of the limitations reported by Dr. Smith "would yield a favorable decision in this case" [*Id.* at 4]. Therefore, plaintiff requests remand for further administrative proceedings [*Id.* at 5].

### A. Post-Hoc Rationalizations

As mentioned above, plaintiff objects to the R&R's findings as to supportability, a factor an ALJ is required to consider in evaluating the evidence [Doc. 17, pp. 1–3].

Specifically, plaintiff asserts that the Magistrate Judge recommends that this Court agree with the Commissioner who argues "that the ALJ did not fail to articulate how he considered the supportability factor because the court can discern that the ALJ's analysis aligned with supportability" [*Id.* at 2 (quoting Doc. 16, p. 20)]. Plaintiff contends that "gleaning of what the ALJ *could have intended* could only have been accomplished by a post[-]hoc rationale[,]" and the Court cannot rely on post-hoc rationalizations "when the ALJ fails to adequately explain his reasoning for discounting an opinion under the regulations" [*Id.* at 3 (emphasis in original) (citations omitted)]. In response, defendant claims that plaintiff mischaracterizes the Commissioner's argument and the Magistrate Judge's finding [Doc. 18, p. 2]. Specifically, defendant states that "[t]he Commissioner argued that the ALJ provided more than one rationale that addressed the supportability prong, and the fact that the ALJ did not use the word 'supportability' was not determinative so long as the ALJ's analysis aligned with the regulations" [*Id.* (citing Doc. 14, pp. 5–7)]. The Magistrate Judge agreed with this argument, making consistent findings, and therefore, defendant contends, plaintiff has failed to show any flaw in the Magistrate Judge's finding [*Id.*].

"When an ALJ fails to make a determinative and necessary finding of fact in a sequential step, a reviewing court should not 'fill that gap.'" *Harvey v. Comm'r of Soc. Sec.*, No. 16-2366, 2017 WL 4216585, at *7 (6th Cir. Mar. 6, 2017) (citation omitted); *accord Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) (rejecting appellate counsel's post hoc rationalization for an agency's decision where such reasoning did not

"appear in either the ALJ's report or the Board's decision and order" and affirming that "[c]ourts are not at liberty to speculate on the basis of an administrative agency's order"). Identifying additional evidence in the record to support the ALJ's analysis is not engaging in post-hoc rationalization. *See Bozer v. Berryhill*, No. CV 16-13331, 2017 WL 6616729, at *4 (E.D. Mich. Dec. 28, 2017) (citation omitted); *Moore v. Comm'r of Soc. Sec.*, No. 3:23 CV 979, 2024 WL 3197570, at *3 (N.D. Ohio June 27, 2024).

While Judge Wyrick did agree with the Commissioner's argument that "the court can discern that the ALJ's analysis aligned with supportability," the Court does not find that this discernment entailed an engagement with post-hoc rationalizations. In other words, the Court does not find that the Judge Wyrick "fill the gap" in finding that several of the reasons offered by the ALJ for partially rejecting Dr. Smith's opinion bear on the issue of supportability. *See Harvey*, 2017 WL 4216585, at *7 (citation omitted).[3] However, the Court finds that one of the reasons Judge Wyrick cited as addressing supportability instead addresses only consistency. In turn, the Court will evaluate each of the reasons given by the ALJ for discounting Dr. Smith's opinion that Judge Wyrick found to address supportability below.

---

[3] Furthermore, the Court notes that the absence of the word "supportability" in the ALJ's analysis of Dr. Smith's opinion does not mean imply that Judge Wyrick, in finding that the ALJ considered supportability, engaged in post-hoc rationalizations. *See Ebeling v. Comm'r of Soc. Sec.*, No. 521CV00115TBRLLK, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) (finding that while "[t]he ALJ may not have explicitly used the term 'supportability' from the updated regulations, . . . it is implied in her reasoning"). An ALJ need not use the word "supportability" "as long as the ALJ still performs the requisite analysis of th[is] factor[], and a reviewing court is able to follow the ALJ's reasoning." *Ford v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-524, 2023 WL 2088157, at *18 (N.D. Ohio Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 2080159 (N.D. Ohio Feb. 17, 2023) (citation omitted) (internal quotation marks omitted).

8

Before addressing these findings, however, the Court finds it pertinent to reiterate what is meant by the factor of "supportability." As stated by the R&R, "[i]n assessing whether a medical opinion is supportable, the focus is on the relevance of the objective medical evidence and supporting explanations upon which the opinion is based" [Doc. 16, p. 11]. *See* 20 C.F.R. § 404.1520c(c)(1). In other words, supportability is a consideration of "whether or not a medical source has explained—or sufficiently justified—his or her own opinion." *Elaine S. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-240, 2023 WL 6290070, at *3 (S.D. Ohio Sept. 27, 2023) (citations omitted) ("[T]he supportability factor makes medical and intuitive sense. A doctor who explains his or her opinion generally presents a more persuasive opinion than one who does not. If a medical source also explains why certain objective medical evidence supports his or her opinion, all the better—the opinion becomes even more persuasive."). "In practice, this means that the 'supportability' factor 'concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence.'" *Teresa A. v. Comm'r Soc. Sec.*, No. 2:23-CV-036, 2024 WL 62646, at *4 (S.D. Ohio Jan. 5, 2024), *report and recommendation adopted*, No. 2:23-CV-36, 2024 WL 4403751 (S.D. Ohio Oct. 4, 2024) (quoting *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-cv-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021)).

Turning to the determinations of Judge Wyrick regarding supportability, the Court begins by noting that the ALJ discounted Dr. Smith's opinion in regard to her *marked* limitation findings in sustaining concentration, persistence, pace, and adaptation [*See*

9

Doc. 7, p. 29].  The ALJ did, however, find that there was support in Dr. Smith's opinion for *moderate* limitations [*Id.*].  Thus, the ALJ did not entirely dismiss Dr. Smith's opinions, but rather, he found her findings of limitations to the greatest extent to be inconsistent for seven total reasons.  As discussed in the R&R, Judge Wyrick found that the ALJ's fourth, sixth, and in part, fifth and seventh reasons for discounting Dr. Smith's opinion addressed supportability.[4]

The Court will start with the ALJ's fourth reason:

4) With the claimant reporting on her activities of daily living during Dr. Smith's consultative examination, the claimant did not indicate that mental impairments impacted her functional capacities. She reported limitations to her activities of daily living were caused by physical limitations including chronic pain[.]

[Doc. 7, p. 30].  Finding this reason to address supportability, the R&R states that the ALJ found that plaintiff's reports to Dr. Smith of being able to concentrate well enough to perform daily activities, such as caring for her father, weighed against Dr. Smith's conclusion that plaintiff had marked limitations in concentration, persistence, and pace [Doc. 16, p. 19].  Furthermore, the R&R avers, the ALJ found Dr. Smith's opinions to be "less than fully supportable because, based upon the information contained in Dr. Smith's own records, it appears that [plaintiff] stated her limitations in the ability to perform activities of daily living result from her physical limitations and chronic pain rather than mental functioning" [*Id.* (citing Doc. 14, p. 6)].

---

[4]  Additionally, as noted in the R&R, the parties agreed that the first reason provided by the ALJ for discounting Dr. Smith's opinion addressed the factor of supportability [Doc. 16, p. 14].

In her report, and as noted by the ALJ, Dr. Smith described plaintiff's activities of daily living, which included taking care of her father, doing chores, and going out to eat and shop with her boyfriend [Doc. 7, p. 401]. In the same section, Dr. Smith noted plaintiff's issues with holding up her hands and "hurt[ing]" [*Id.*]. Additionally, Dr. Smith relayed that plaintiff stated that she could do okay if she could stop and rest as needed [*Id.*]. As the ALJ finds from the above information, plaintiff's difficulties with activities of daily living are due to her physical limitations, not any mental limitations [*See* Doc. 7, p. 30]. In making this notation, it can be implied that the ALJ finds an internal inconsistency between Dr. Smith's description of plaintiff's activities and the ultimate assessment Dr. Smith made as to concentration, persistence, pace, and adaptation.

The Court also notes that, as to these four areas emphasized by the ALJ, Dr. Smith only explicitly mentions "concentration" outside of her "Medical Assessment" section. Specifically, Dr. Smith states that, "[i]n term of concentration, [plaintiff] could do serial subtractions of 5 from 100 but not 3 or 7 from 100. [Plaintiff] could spell the word [']world['] backwards" [Doc. 7, p. 400]. This evidence, coupled with the ALJ's statement regarding the source of plaintiff's activity limitations, addresses how supportable the ALJ rendered Dr. Smith's assessment of plaintiff's abilities, particularly, it appears, her ability to concentrate. *See Bozer*, 2017 6616729, at *4. Ultimately, the Court finds, as the R&R did, that the fourth reason cited by the ALJ for discounting Dr. Smith's opinion addresses supportability.

11

The sixth reason cited by the ALJ for discounting Dr. Smith's opinion, which the Judge Wyrick determined addressed supportability, provides:

> 6) At the hearing the claimant complained of not being able to remember things, with her boyfriend, Jasper Brogan, also testifying that the claimant did not remember things, but in the mental status examination performed by Dr. Smith, she indicated that the claimant's recent and remote memory were within normal limits. In the claimant's function report, she did not need any special reminders to take care of her personal needs and grooming. She did not need any reminders to take her medicine.

[Doc. 7, p. 30]. As to this reason, the R&R states that the ALJ "observed that despite the testimony of Claimant and her boyfriend that Claimant could not remember things, Dr. Smith herself documented that Claimant's recent and remote memory were within normal limits" [Doc. 16, p. 19]. Ultimately, upon reviewing the ALJ's report, the Court finds that the sixth reason addresses only consistency rather than supportability. As stated by the R&R, the focus for consistency "is how the opinions provided square with the overall record" [*Id.* at 11]. Here, the ALJ, as acknowledged by the R&R, is squaring Dr. Smith's opinion as to memory with the hearing testimony of plaintiff and her boyfriend as well as plaintiff's own function report. This kind of analysis by the ALJ is not an internal evaluation, as is the case with the supportability factor, and therefore, the Court **MODIFIES** the R&R's report and recommendation accordingly.

Next, the R&R concluded that the ALJ's fifth reason, in part, addresses supportability:

> 5) There is no evidence of recent mental health treatment. This was confirmed by the claimant at the hearing, that she has never sought psychological treatment, though she did testify that when she was taking an

12

anger management course prescribed by a court, she did see someone at Helen Ross McNabb;

[Doc. 7, p. 30]. As assessed by the R&R, the ALJ observed that, despite the claimant reporting to Dr. Smith that she had not participated in mental health treatment previously, Dr. Smith diagnosed plaintiff with serious mental health conditions [Doc. 16, p. 19].

In her report, Dr. Smith describes plaintiff's psychiatric and psychological history, noting first that plaintiff has allegations of anxiety, depression, and memory loss [Doc. 7, p. 399]. Additionally. Dr. Smith writes that plaintiff previously went to Helen Ross McNabb Center a few years ago for anger management class [*Id.*]. Regarding medication, Dr. Smith states that plaintiff had taken Prozac and antipsychotic medication previously, but neither of these helped her [*Id.*]. In total, Dr. Smith's report confirms that plaintiff had not recently been treated for mental health. In noting such lack of treatment, the ALJ emphasizes a lack of objective evidence[5] upon which Dr. Smith could rely on in making her assessments as to concentration, persistence, pace, and adaptation. Specifically, the lack of recent mental health treatment equates to a lack of recent psychological tests, abnormalities being observed, and diagnoses, amongst other objective evidence. And supportability, in part, "concerns an opinion's reference to . . . other objective medical evidence." *See Teresa A.*, 2024 WL 62646, at *4 (citation

---

[5] "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)" which "must be shown by medically acceptable clinical diagnostic techniques." *Id.* § 404.1502(g). Laboratory findings, on the other hand, "mean[] one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" which includes psychological tests. *Id.* § 404.1502(c).

13

omitted). In sum, the Court finds that the fifth reason cited by the ALJ for discounting Dr. Smith's opinion does, in part, address supportability.

The seventh reason provided by the ALJ is as follows:

> 7) Dr. Smith's report has inconsistencies and contradictions, e.g. thinking organized and logical, but she has visual and auditory hallucinations; she is very depressed, but if she has a day without chronic pain, she can feel good and happy. Dr. Smith also uses vague, idiosyncratic language, e.g. "big hallucinations." Her medical opinion has minimal persuasiveness; e.g., she rates the claimant's ability to adapt as "marked" with no evidence to substantiate that limitation. In fact, the claimant managed the household containing her and her demented father, who requires comprehensive care by her. However, it was noted at the hearing that her father died on February 11, 2023.

[Doc. 7, p. 30]. The R&R provides that the ALJ contrasted plaintiff's reported symptoms associated with depression and anxiety with plaintiff's daily activities, concluding that Dr. Smith "had no objective medical evidence to rely upon in reaching her conclusions that [plaintiff] was markedly limited in her ability to adapt" [Doc. 16, pp. 19–20]. Additionally, the R&R noted independently that "Dr. Smith [did] not provide any specific explanation in conjunction with stating what limitations she found Claimant to be experiencing" [*Id.* at 20].

The Court finds, as the R&R does, that this seventh factor bears on supportability, which as stated previously, relates to a medical source's sufficient explanation or justification for their opinion. *See Elaine S.*, 2023 WL 6290070, at *3. First, the ALJ describes a *lack* of explanation on the part of Dr. Smith's opinion. Specifically, the ALJ emphasizes that Dr. Smith concluded that plaintiff had, to the greater extent, a marked limitation to adapt, but there was no evidence to substantiate such a conclusion [Doc. 7,

p. 30]. And furthermore, the ALJ cites contradictory evidence which exists within Dr. Smith's report [*Id.*]. Moreover, the ALJ notes Dr. Smith's usage of "vague" language, reasonably implying that Dr. Smith's explanations for her conclusions lack clarity. Second, by pointing out Dr. Smith's report's internal inconsistencies and contradictions, the ALJ describes *unsound* explanations or justifications for Dr. Smith's conclusions. In other words, the ALJ notes the internal conflicts of Dr. Smith's explanations, which in turn, make her conclusions less persuasive. In total, the Court finds ample support for the R&R's conclusion that the seventh reason provided by the ALJ for discounting Dr. Smith's opinion addresses the factor of supportability, thus overcoming plaintiff's assertion of post-hoc rationalizations here.

For the reasons set forth above, plaintiff's objection here is **OVERRULED**, but the Court does **MODIFY** the findings as to the supportability factor according to the analysis set out *supra*.

### B. Reliance on *Myatt*

As discussed previously, plaintiff's second objection is to the R&R's reliance on *Myatt*, which plaintiff claims is "distinguishable" from faulting a mentally ill person for failing to obtain and following through with appropriate mental health treatment [Doc. 17, p. 4]. Plaintiff also argues that the Sixth Circuit, in a similar case, "found that an ALJ errs by discounting restrictions attributed to a mentally impaired person 'solely because she failed to seek formal treatment'" [*Id.* (citations omitted)]. In response, defendant insists that the Magistrate Judge cited to the *Myatt* opinion "for the proposition

15

that a condition that can be managed with treatment is not disabling[,] . . . a point that [p]laintiff has not challenged" [Doc. 18, p. 2]. Moreover, defendant emphasizes that in *Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *3 (6th Cir. Apr. 9, 2024), the Sixth Circuit upheld an ALJ's supportability analysis "where the ALJ found that the opining psychologist's limitations were not well supported by the corresponding examination findings but instead relied heavily on the plaintiff's subjective complaints" [*Id.* (citing Doc. 14, p. 7)].

The Court will begin by quoting the relevant portion of the R&R at issue:

> Finally, the ALJ relied heavily on Claimant's lack of psychological treatment. The Sixth Circuit has generally held that conditions which can adequately be managed through use of medication and other treatment are "inconsistent with a diagnosis of total disability." *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 335 (6th Cir. 2007). Moreover, an ALJ may rely upon a lack of therapy or hospitalization as an indication that a claimant's subjective complaints as to the severity of his or her symptoms is inconsistent with the record. *See Dale S. v. Comm'r of Soc. Sec.*, No. CV 22-13030, 2024 WL 1312491, [at] *11 (E.D. Mich. Mar. 12, 2024), *report and recommendation adopted*, No. 22-13030, 2024 WL 1319701 (E.D. Mich. Mar. 27, 2024). This leaves only Dr. Smith's diagnosis to stand against the dearth of mental health evidence in the record. As such, the Court must find that substantial evidence supports the ALJ's conclusion that Dr. Smith's opinion was not entirely consistent with the record evidence.

[Doc. 16, p. 23 (internal citations and footnote omitted)]. After quoting *Myatt*, the R&R, in a footnote, highlighted the fact that "Claimant was not even consistently taking her mental health medications" [*Id.* at 23 n.12].

Based on her objection, it appears plaintiff is attempting to distinguish that, in her case, the ALJ did not rely on nor state that plaintiff's mental health issues could be

appropriately managed through medication and treatment, though the R&R's citation to *Myatt* seems to allude otherwise. Rather, plaintiff contends, the ALJ faulted plaintiff for not seeking mental health treatment, an improper basis on which to "discount[] restrictions attributed to a mentally impaired person[,]" specifically those attributed by Dr. Smith [Doc. 17, p. 4].

First, the Court notes that while the proposition for which the R&R cited to *Myatt* may not be applicable to plaintiff's case, as there is no evidence in plaintiff's case of consistent mental health management, this does not mean that such proposition is incorrect. Furthermore, the R&R does not solely rely on *Myatt* in its analysis of the ALJ's reliance on plaintiff's lack of psychological treatment. Specifically, the R&R also cites to *Dale S.* for the assertion that "an ALJ may rely upon a lack of therapy or hospitalization as an indication that a claimant's subjective complaints as to the severity of his or her symptoms is inconsistent with the record" [Doc. 16, p. 23 (2024 WL 1312491, at *11)]. As noted by defendant, plaintiff makes no challenge to this citation.

The Court next observes that plaintiff does not point to any portion of the ALJ's report in which he faults plaintiff for "failing to obtain and follow through with appropriate mental health treatment" [*See* Doc. 17, p. 4]. Rather, the ALJ makes an unadorned statement in evaluating Dr. Smith's opinion that "there is no evidence of recent mental health treatment" [*See* Doc. 7, p. 30]. The ALJ issues this statement as a reason for not finding Dr. Smith's opinion "to be persuasive regarding the marked limitation in sustaining concentration, persistence, and pace and adaptation" [*Id.* at 29].

17

Specifically, the ALJ finds Dr. Smith's marked limitation findings in said areas to be "inconsistent" with the lack of evidence of recent mental health treatment in the overall record [*Id.*].

Plaintiff cites to *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493 (6th Cir. 2011) in arguing that "an ALJ errs by discounting restrictions attributed to a mentally impaired person 'solely because she failed to seek formal treatment'" [Doc. 17, p. 4].[6]  The Court notes, however, that the ALJ did not discount the restrictions attributed by Dr. Smith to plaintiff *solely* on the basis that there was no evidence of recent mental health treatment.  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016).  The ALJ also stated that Dr. Smith's opinions of marked limitations in areas of concentration, persistence, pace, and adaptation were inconsistent with plaintiff's own function report, Dr. Smith's report of plaintiff's activities of daily living, and testimony at the hearing before the ALJ [*See* Doc. 7, p. 30].  Furthermore, the ALJ discounted Dr. Smith's opinions based on issues of supportability, as discussed above, such as inconsistencies and contradictions within Dr. Smith's own report [*Id.*].

The Court notes, however, that the Sixth Circuit has recognized that "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state.  For some mental disorders, the very failure to seek

_____

[6]  The Court notes that in *Boulis-Gasche*, the Court considered the failure to seek formal treatment in the context of whether a mental impairment *existed*, which is dissimilar to the context here in which the Court is evaluating whether the ALJ addressed the factor of consistency. *See* 451 F. App'x at 493.  Further, the Court also notes that the ALJ found plaintiff to have, as severe impairments, major depressive disorder and generalized anxiety disorder, in addition to respiratory disorder due to possible remote mold exposure [*See* Doc. 7, p. 24].

treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). "But where there is no evidence that explains the lack of treatment, an ALJ may properly rely on the lack of treatment as a factor in evaluating a claimant's limitations." *Benson v. Comm'r of Soc. Sec.*, No. 3:19 CV 2804, 2021 WL 804150, at *2 (N.D. Ohio Mar. 2, 2021) (first citing *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010); and then *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir. 2018)); *accord White*, 572 F.3d at 283–84 ("[T]here is no evidence in the record explaining [the plaintiff's] failure to seek treatment during this half-year gap [and a] 'reasonable mind' might therefore find that the lack of treatment . . . indicated an alleviation of [the plaintiff's] symptoms.").

Here, plaintiff presents no argument that her mental health symptoms prevented her from seeking treatment either in her objection or her briefing. And the Court cannot ascertain any other evidence from the ALJ's report that explains plaintiff's failure to seek treatment. Thus, the Court does not find that the ALJ erred in relying on plaintiff's lack of recent mental health treatment in his opinion nor that Judge Wyrick erred in her analysis of the matter. Accordingly, plaintiff's objection here is **OVERRULED**.

### C.    Harm

Given the Court's above rulings, it is unnecessary to address plaintiff's arguments as to harm. Accordingly, plaintiff's objection here is **OVERRULED**.

19

**IV. Conclusion**

For the reasons above, plaintiff's objections [Doc. 17] are **OVERRULED**. The Court **MODIFIES** the R&R's findings as to supportability to align with the Court's above analysis and **ACCEPTS** the remainder of the R&R [Doc. 16]. Accordingly, the decision of the Commissioner is **AFFIRMED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE